**Inez H. LONG, Petitioner,**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW,
Respondent.**

Commonwealth Court of Pennsylvania.

Submitted March 21, 1997.

Decided June 24, 1997.

Timothy M. Sullivan, Altoona, for petitioner.

Paul R. Jordan, Assistant Counsel, and Clifford F. Blaze, Deputy Chief Counsel, Harrisburg, for respondent.

Before COLINS, President Judge, and SMITH, J., and LORD, Senior Judge.

SMITH, Judge.

Claimant Inez H. Long petitions for review of the decision of the Unemployment Compensation Board of Review that reversed the referee and denied benefits pursuant to Section 402(b) of the Unemployment Compensation Law (Law).[1] Claimant ques-

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(b).

tions whether her termination was voluntary and whether she returned to the Altoona area in reliance upon Employer JC Penney's representation that there was a job available for her.

Claimant was employed by Employer for 22 years and was last employed as a sales associate. In February 1996, Claimant informed Carolyn Shallop, Employer's personnel specialist, that she wanted to transfer to a branch store in Phoenix, Arizona because she and her fiance intended to relocate there for personal reasons. Claimant signed a contingent transfer application on February 24, 1996, which provided in pertinent part:

> I understand that if I am able to obtain employment as a regular associate of another JCPenney unit within three months (90 days) from the date on this form and have not taken other employment in the meantime, my separation from the above location will be considered a transfer rather than a resignation, the intervening period will be treated as an unpaid absence, and I will have continuity of employment as a regular associate for participation in Company benefits.

> I further understand that because this transfer is being sought for personal reasons, the Company assumes no obligations for ... providing employment at any Company location. I also understand that the granting of this contingent transfer does not constitute a guarantee of continued employment.... If I find employment with JCPenney beyond the three month period, I will be treated as a new hire, regardless of the reason for the delay.

Claimant testified that by signing the contingent transfer application, she did not believe that she resigned from her employment, and neither Shallop nor Employer's store manager, Walter Dishman, conveyed to her that completion of the transfer application constituted a voluntary termination.

Claimant moved to Arizona on March 4, 1996. While there, she contacted two of Employer's branch stores regarding employment without success. After learning that her mother, who was living in a Pennsylvania nursing home, was not in good health and that her condition was deteriorating, Claimant and her fiance decided to return to Pennsylvania. Claimant testified that on March 26, she contacted Dishman to notify him that she wanted to return to her former job, and he told her that she could come back to the Altoona store. Dishman met with Claimant on April 21 and informed her that no job was available. Shallop testified that a replacement was found for Claimant after she left the Altoona store; that at the time Claimant signed the transfer application she was told that she could return to the Altoona store if a job were available; that Claimant never resigned from the position; and that Employer terminated Claimant on June 1, 1996 because she had not obtained employment with JC Penney within the 90–day period of absence provided in the application.[2] The referee granted benefits, finding that Claimant did not quit her job and that she returned to Pennsylvania within the 90–day period based upon her impression that a job would be available. The Board, however, found that Claimant voluntarily left her employment as of February 24 and that in March 1996, Claimant and Employer's store manager only discussed the possibility that Claimant could return to the Altoona store. The Board noted that Claimant did not move to follow a spouse who was involuntarily transferred and instead moved for personal reasons.[3] Based upon its findings, coupled

---

**2.** Claimant testified that she was eligible for full retirement benefits as of August 20, 1996, which included life insurance, health insurance and a pension.

**3.** For unemployment compensation purposes, when a claimant voluntarily terminates employment to follow a spouse to a new location, the claimant must establish the existence of a family unit at the time of termination. *Kurtz v. Unemployment Compensation Board of Review,* 101 Pa. Cmwlth. 299, 516 A.2d 410 (1986), *appeal denied,*

516 Pa. 644, 533 A.2d 715 (1987). Once this burden is met, the claimant must also show that, among other things, the relocation was caused by circumstances beyond the control of claimant's spouse and was not brought about by purely personal reasons. *Lechner v. Unemployment Compensation Board of Review,* 163 Pa.Cmwlth. 111, 639 A.2d 1317 (1994). Since Claimant relocated to follow a fiance and not a spouse, she cannot meet the primary threshold of establishing the existence of a family unit. Therefore, this

with the language contained in the contingent transfer application, the Board concluded that Claimant quit her job as of February 24 without a necessitous and compelling cause. This Court's scope of review of the Board's decision is limited to determining whether the necessary findings are supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. *Chamoun v. Unemployment Compensation Board of Review*, 116 Pa.Cmwlth. 499, 542 A.2d 207 (1988).

▆▆▆▆ Section 402(b) of the Law provides that a claimant shall be ineligible for compensation in any week in which the claimant's unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature. *Chamoun*. Whether a claimant voluntarily terminated his or her employment or was discharged is a question of law to be decided by the Court. *Feinberg v. Unemployment Compensation Board of Review*, 160 Pa.Cmwlth. 524, 635 A.2d 682 (1993), *appeal denied*, 539 Pa. 670, 652 A.2d 840 (1994). The Court must examine the facts in their totality when deciding whether an employee voluntarily resigned or was discharged. *Pennsylvania Liquor Control Board v. Unemployment Compensation Board of Review*, 167 Pa.Cmwlth. 386, 648 A.2d 124 (1994), *appeal denied*, 540 Pa. 615, 656 A.2d 120 (1995). An employee's action is considered voluntary where, without action from employer, the employee consciously intends to leave his or her employment. *Griffith Chevrolet–Olds, Inc. v. Unemployment Compensation Board of Review*, 142 Pa. Cmwlth. 242, 597 A.2d 215 (1991).

▆▆▆▆ Claimant essentially argues that the Board's findings that she voluntarily terminated her employment as of February 24, 1996 are not supported by the evidence of record and that the Board erred by not adopting the referee's findings. Specifically, Claimant argues that she did not voluntarily resign from her employment and that the contingent transfer agreement clearly provided her with 90 days to secure a new position. She further states that she returned to Altoona based upon Dishman's representation that a job was available for her. Claimant therefore maintains that she became unemployed on June 1, only after Dishman reneged on his offer.

Citing *Stankiewicz v. Unemployment Compensation Board of Review*, 120 Pa. Cmwlth. 157, 548 A.2d 366 (1988), Claimant contends that her separation from employment was involuntary. In *Stankiewicz* the Court held that the claimant was involuntarily terminated where her attempt to return to her position at the end of a six-month leave of absence failed because no suitable position was available. The Board argues here that *Stankiewicz* is distinguishable because Claimant voluntarily terminated her employment and was not on an approved leave of absence and that the contingent transfer application merely provided her with 90 days to secure a position at another Employer branch store to enable her to maintain her seniority status for benefits purposes.

Based upon the testimony of Claimant and Shallop, Claimant never resigned from her position, and the contingent transfer application, by its terms, protected Claimant's employment status for 90 days. Like the claimant in *Stankiewicz*, Claimant here attempted to return to work before the expiration of her leave period scheduled to end on May 25, 1996, according to the agreement. No position was made available to Claimant although Shallop conceded that Claimant could return to her employment if a position were open. Regardless of whether Dishman represented that a job was available to Claimant in the Altoona store, the fact remains that Claimant attempted to return to her position within 90 days. Claimant's testimony that she never quit her employment, when read in conjunction with Shallop's testimony that Claimant attempted to return to her employment within the 90–day period, demonstrates that Claimant did not consciously intend to leave her employment. The facts in their totality do not support the Board's conclusion that Claimant voluntarily quit her job as of February 24, 1996.

Court need not address the additional factors relating to the preservation of a family unit.

Because Claimant never resigned from her position and attempted to return to Employer before the expiration of the 90–day leave period and because Employer terminated Claimant on June 1, 1996, the Board erred in holding that Claimant voluntarily quit her employment. Accordingly, the order of the Board is reversed.[4]

### ORDER

AND NOW, this 24th day of June, 1997, the order of the Unemployment Compensation Board of Review is reversed.

---

4. In her brief, Claimant also argues that Employer failed to serve Claimant with its letter brief filed before the Board but does not request relief based upon this issue. An issue not raised in the statement of the questions involved is deemed waived. Pa. R.A.P. 2116(a); *Commonwealth v. Unger,* 494 Pa. 592, 432 A.2d 146 (1980).